Arthur SHELTON, Appellant,

v.

UNITED STATES BOARD OF PAROLE, Appellee.

Harvey Marion BOSWELL, Appellant,

v.

UNITED STATES BOARD OF PAROLE, Appellee.

Donald L. SMITH, Appellant,

v.

Hugh RIVERS, Chairman, District of Columbia Board of Parole et al., Appellees.

Elbert Henry WHITE, Appellant,

v.

UNITED STATES BOARD OF PAROLE et al., Appellees.

John L. JACOBS, Appellant,

v.

DISTRICT OF COLUMBIA BOARD OF PAROLE et al., Appellees.

George L. WILLIAMS, Appellant,

v.

Paul H. PRESTON, Superintendent, District of Columbia Jail, Appellee.

Nos. 20591, 20674, 20685, 20686, 20687, 20823.

United States Court of Appeals District of Columbia Circuit.

THE PAROLE BOARD CASES.

Argued March 10, June 16, March 29, and June 27, 1967.

Decided Nov. 1, 1967.

———◆———

Mr. Jim W. Gipple, Washington, D. C. (appointed by this court), for appellant in No. 20,591.

Mr. Edward T. Miller, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., Mr. Frank Q. Nebeker, Miss Ellen Lee Park and Mr. E. Grey Lewis, Asst. U. S. Attys., were on the brief, for appellee in No. 20,591.

Mr. Richard Shlakman, Washington, D. C. (appointed by this court), for appellant in No. 20,674.

Mr. Robert S. Brady, Sp. Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and E. Grey Lewis, Asst. U. S. Attys., were on the brief, for appellee in No. 20,674.

Mr. Joseph M. Snee, Washington, D. C. (appointed by this court), for appellants in Nos. 20,685–20,687 and 20,-823.

Mr. Lee A. Freeman, Jr., Asst. U. S. Atty., argued for appellee in Nos. 20,-685–20,687.

Mr. Joel Finkelstein, Washington, D. C., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, argued for appellee in No. 20,823.

Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the briefs for appellees.

Mr. Nathan Dodell, Asst. U. S. Atty., was on the brief for appellee in Nos. 20,685–20,687.

Mr. Thomas Lumbard, Asst. U. S. Atty., was on the brief for appellee in No. 20,823.

Before WRIGHT, McGOWAN and LEVEN-THAL, Circuit Judges.

MEMORANDUM BY THE COURT

In a group of cases decided today, we have pondered a number of problems that arise in the administrative process of the United States Board of Parole or

the District of Columbia Parole Board, leading to a determination whether a parolee has violated his parole or mandatory release, and, if so, what action is appropriate. We provide herewith a prefatory memorandum relating the essence of our rulings:

1. Where the parolee has been charged with committing a crime while on parole the Board retains jurisdiction if it acts timely in issuing its violator warrant[1] and notifying the parolee thereof (including notice that the warrant has been lodged as a detainer), although the Board defers consideration on its charge until completion of the criminal proceeding. Shelton v. United States Board of Parole, No. 20591, *infra.*

2. Where a warrant is timely issued charging a parolee with violating the terms and conditions of his release by misconduct other than the commission of a crime, the Board is obligated to hold a prompt hearing on the fact of violation even though the Board's jurisdiction survives intervening service of an unrelated criminal sentence. Where the parolee is prejudiced by the Board's failure to hold a prompt hearing, the parolee is entitled to an order of unconditional release. Boswell v. United States Board of Parole, No. 20681, *infra.*

3. Where the fact of parole violation has been conclusively established by an adjudication, either state or federal, that a criminal offense was committed during the release period, the parole violator is entitled to apply to the Board for immediate determination of the disposition to be made concerning the consequences of his parole violation, and to seek what is in effect concurrent service on all, or a part of, the unexpired portion of his original sentence with the sentence imposed for the criminal offense which constituted the parole violation. Smith v. Rivers, No. 20685, *infra*; Williams v. Preston, No. 20823, *infra.*

4. The Boards have recently issued new regulations—in lieu of informal procedures—concerning the processing and disposition of applications for withdrawal or execution of parole violator warrants prior to the expiration of the intervening sentence. Appeals not otherwise disposed of are remanded so that petitioners may pursue the administrative remedies provided in these regulations. Smith v. Rivers, No. 20685, *infra.*

5. Judicial review of the dispositional phase of parole revocation proceedings is available, if at all, only after the violator has pursued his administrative remedies. Smith v. Rivers, No. 20685, *infra.*

No. 20,591 *Shelton v. United States Board of Parole*

PER CURIAM:

Appellant was mandatorily released from federal custody pursuant to 18 U.S.C. §§ 4161, 4163, 4164 (1964). During the release period, he was arrested on a criminal charge and the Parole Board promptly issued its warrant charging a violation of the conditions of release. Appellant concedes that the violator warrant was timely issued. Birch v. Anderson, 123 U.S.App.D.C. 153, 358 F.2d 520 (1965).

The warrant was initially lodged as a detainer to be executed following disposition of the pending criminal charge. Shelton has since pleaded guilty to that charge and has been sentenced to imprisonment. The Board's warrant is now lodged as a detainer pending completion of that sentence. Shelton contends that the Board has lost jurisdiction to execute the violator warrant. Birch v. Anderson, *supra,* is cited as authority for that contention.

■ *Birch* involved the very narrow question of the Board's jurisdiction to issue violator warrants. Reading 18 U.S.C. § 4164 (1964) together with 18 U.S.C. § 4205 (1964), we held that a warrant in the case of a mandatory releasee must issue before "the expiration of the maximum term or terms for which he was

---

**1.** In the case of a mandatory release, jurisdiction to issue expires 180 days prior to the expiration of the releasee's sentence. See Birch v. Anderson, 123 U.S.App.D.C. 153, 358 F.2d 520 (1963).

sentenced less one hundred and eighty days." More recently, we relied on 18 U.S.C. § 4207 (1964) to reject a contention that *Birch* deprived the Board of jurisdiction to enter a revocation order where the warrant was timely issued and executed, but revocation was delayed to await the outcome of pending criminal proceedings. Carswell v. Parker, 128 U.S.App.D.C. ——, 385 F.2d 645 (No. 20568, July 24, 1967). Today, we must decide whether, given timely issuance, *Birch* bars execution on jurisdictional grounds where the Board awaits the outcome of pending criminal charges, and any sentence imposed thereon. Appellant contends that the Board is ousted of jurisdiction. We reject this contention, hold that the Board retains jurisdiction, and affirm.

In our view Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938), is controlling. There, Mr. Justice Black, writing for a unanimous Court, rejected a substantially similar argument on the theory that such a rule would preclude the Parole Board, in all cases, from imposing a sanction for violation of the terms and conditions of release. To ensure that this dispositional alternative remained available to the Board, the Court held that "service of the original sentence was interrupted by [the] parole violation." 304 U.S. at 362, 58 S.Ct. at 873.[2] Although the Supreme Court did not construe the statutes we found controlling in *Birch*, we think the rationale of Zerbst v. Kidwell is applicable. There is nothing in the plain language of the statutes that would compel us to uphold appellant's contentions and we think, as in *Zerbst*, it would require us to attribute an unreasonable intention to Congress in order to do so.

This court has consistently rejected such arguments prior to *Birch*,[3] as have the other courts of appeals.[4] We have given the question careful reconsideration in light of *Birch* and find no reason to hold to the contrary.

Affirmed.

No. 20,674 *Boswell v. United States Board of Parole*

PER CURIAM:

Appellant sought declaratory and injunctive relief in the District Court contending that a violator warrant issued by the U. S. Board of Parole and then lodged as a detainer against him had, in fact and law, been executed. Appellant also complained that a delay in holding a preliminary interview or revocation hearing on the facts underlying the warrant had prejudiced him, contending that "unavoidable [and] extenuating circumstances * * * might well have benefited [him] in the disposition made by the Board of Parole" had a prompt hearing been held. The District Court granted appellees' motion for summary judgment. We reverse, having concluded that this case was inappropriate for summary disposition.

▄▄▄ In 1958, appellant was sentenced to eight years imprisonment by the United States District Court for the Middle District of Alabama following conviction on a charge of possession of counterfeit federal reserve notes. In December of 1963, he was mandatorily released, and under the provisions of 18 U.S.C. § 4164, that release was the equivalent of a parole until the expiration of his Alabama sentence minus the terminal 180 days. Birch v. Anderson, 123 U.S.App.D.C. 153, 358 F.2d 520

---

2. Compare Boswell v. United States Bd. of Parole, No. 20674, decided today.

3. Mock v. United States Bd. of Parole, 120 U.S.App.D.C. 248, 345 F.2d 737 (1965); Woykovsky v. Chappell, 119 U.S.App.D.C. 8, 336 F.2d 927 (1964), cert. denied, 380 U.S. 916, 85 S.Ct. 903, 13 L.Ed.2d 801 (1965).

4. *See, e.g.,* Avellino v. United States, 330 F.2d 490 (2d Cir.), cert. denied, 379 U.S.

922, 13 L.Ed.2d 336 (1964); Smith v. Blackwell, 367 F.2d 539 (5th Cir. 1966); Jenkins v. Madigan, 211 F.2d 904 (7th Cir.), cert. denied, 348 U.S. 842, 75 S.Ct. 63, 99 L.Ed. 664 (1954); Sprouse v. Settle, 274 F.2d 681 (8th Cir. 1960); Zavada v. Taylor, 285 F.2d 66 (10th Cir. 1960).

(1965). During the release period, the Parole Board issued a violator warrant charging appellant with violating the terms of his release by failing to maintain contact with his supervisor and neglecting to file required monthly supervision reports. About a month later, appellant was arrested in Houston, Texas, under circumstances which are disputed on this record. For present purposes, however, it is sufficient to note that a few days after his arrest, appellant entered a plea of guilty in the United States District Court for the Southern District of Texas, to a charge of interstate transportation of a stolen motor vehicle in violation of the Dyer Act. The District Judge imposed a two and a half year sentence, explicitly providing that it was "to run consecutive to any time unserved under previous sentences." The Parole Board's warrant was lodged as a detainer against appellant's release pending service of this sentence. We are now advised that during the pendency of the case under review appellant completed service of his Dyer Act sentence, and was afforded a hearing by the Board, which revoked his mandatory release. We are further advised that, following an unspecified period of confinement, the Board again released appellant on parole. Since appellant claims he is entitled to be freed of all restraints on his liberty, this case is not moot.[5]

Appellant's principal argument is that the Parole Board lost jurisdiction to execute its violator warrant by virtue of the delay occasioned when it decided to await service of the Dyer Act sentence before undertaking to hold a revocation hearing on the facts underlying its charges. This argument has two prongs: first, appellant asserts that his original Alabama sentence continued to run so that, by the time the Board was ready to revoke parole, it no longer had jurisdiction and, alternatively, it is argued

that the delay in revocation—some two years—was so unreasonable and prejudicial that the Board was without jurisdiction to proceed to revocation under the facts of this case. We reject both jurisdictional arguments.

We have today reaffirmed our view that the Parole Board retains jurisdiction if it awaits the outcome of pending criminal charges where its timely issued warrant alleged the offense involved in those charges as the violation of parole. Shelton v. United States Board of Parole, No. 20591, *supra*. Here, however, the alleged parole violations were wholly unrelated to the Dyer Act charge, and indeed did not themselves constitute crimes. Appellant argues that "the timely (but ex parte) issuance of a warrant to retake does not of itself toll the sentence from which parole has been granted." Assuming for discussion that appellant is correct, in this case we have not merely issuance of a warrant but in addition actual confinement under an intervening criminal sentence. The decision in Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938), makes it clear that this new criminal confinement tolls the running of the original sentence. The Supreme Court concluded that Congress did not intend an intervening sentence to deprive the Parole Board of the opportunity to impose a sanction for parole violations. Since the Board acted promptly in holding a violation hearing after the expiration of the Dyer Act sentence, we do not face a case of unconscionable delay that might, in other circumstances, support a conclusion that the Board lost its jurisdiction to proceed on its violator warrant. We hold that where, as here, parole violator warrants are issued on charges unrelated to criminal conduct during the release period, the subsequent confinement of the violator pursuant to a criminal conviction nevertheless inter-

---

5. However, since appellant was released on parole, not as a mandatory releasee, it is unnecessary to consider whether if he were confined he would be entitled, as he contends, to advance his mandatory

release date by calculating good time credit on his aggregate terms, *i.e.*, the Dyer Act sentence plus the unexpired portion of his Alabama sentence.

rupts service of the original sentence and extends the Parole Board's jurisdiction accordingly.[6]

Appellant also argues, however, that even if the Board retained jurisdiction, its delay in holding the revocation hearing and proceeding to disposition on its warrant was unreasonable and prejudiced appellant. This stirs issues separate from the narrow jurisdictional claim we have already rejected and brings into play the principles we enunciated in Hyser v. Reed, 115 U.S.App. D.C. 254, 318 F.2d 225 (*en banc*), cert. denied *sub nom.* Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316 (1963). There, we held the Board obligated to hold a preliminary interview "as promptly as is convenient after the arrest while the information is likely to be fresh and the sources are available." 115 U.S.App.D.C. at 272–273, 318 F.2d at 243–244. The entire thrust of our *Hyser* opinion is accommodation of the flexibility necessarily required for the administration of the parole system with concepts of elemental fairness to those under the Board's jurisdiction. And, as we made clear, one of the requirements of basic fairness is a prompt hearing where the alleged violator can contest the fact of violation and adduce whatever witnesses or evidence he may have to support his claim of innocence.

Appellees do not suggest that they may unreasonably delay in taking action on a timely violator warrant. Rather, it is their position that "a warrant issued within the maximum term of the original sentence may be executed after the parole violator has served a second sentence imposed while he was on parole." But the cases which appellees cite[7] all concern the situation we faced in Shelton v. United States Board of Parole, No. 20591, *supra*, where we reaffirmed our view that the Board may reasonably await the outcome of pending criminal proceedings where its violator warrant charges that criminal offense as the reason for revocation. Since there is no need to hold a revocation hearing at all in such cases—the violation being established by the criminal conviction—there can be no prejudice to the parolee in regard to determining the fact of violation by awaiting the outcome of criminal proceedings, and there may be an advantage, as appellees suggest, in leaving "the determination of guilt or innocence * * * to the courts [rather] than to an informal Board hearing." But here the Board's warrant did not charge the auto transportation as the act constituting the violation of parole.[8] Where there is confinement for a charge that is not alleged as a ground for revocation of parole it is not per se reasonable to defer determination of whether there has been a violation of parole pend-

6. Our decision on this jurisdictional issue is in accord with the result reached by the District Judge in Boswell v. Parker, 262 F.Supp. 559 (M.D.Pa.1967). We need not consider whether if we entertained a contrary view, appellate relief would be precluded by *res judicata* principles.

7. Ginyard v. Clemmer, 123 U.S.App.D.C. 100, 357 F.2d 291 (1966); Woykovsky v. Chappell, 119 U.S.App.D.C. 8, 336 F.2d 927, cert. denied, 380 U.S. 916, 85 S.Ct. 903, 13 L.Ed.2d 801 (1965); Taylor v. Simpson, 292 F.2d 698 (10th Cir. 1961); Johnson v. Wilkinson, 279 F.2d 683 (5th Cir. 1960); Johnson v. United States, 234 F.2d 813 (4th Cir. 1956); Neal v. Hunter, 172 F.2d 660 (10th Cir. 1949).

8. Citing Johnson v. Chappell, 117 U.S. App.D.C. 190, 327 F.2d 888 (1964), ap-

pellees contend that "the Board at the revocation hearing also took into account appellant's subsequent criminal conviction as it has a right to do." Without the record of those revocation proceedings before us, we cannot say that *Johnson* is controlling. In that case, we were careful to note that the parolee had ample advance notice of the Board's intention to consider the criminal charge. Here, not only is the record silent as to notice, we do not know whether the other charges originally preferred against appellant, and which are unrelated to the criminal offense, played a significant role in the revocation decision. We leave this issue to the remand where the record can be supplemented and the District Court can make an informed determination of the problem.

ing the completion of the unrelated criminal proceedings. If the Board intended to pursue the charge that the parole board's order had been violated by failure to report, there is at least an issue whether it was reasonable to delay this determination for two and a half years merely because the parolee was in confinement on an unrelated Dyer Act charge.

■ We think the issuance of a violator warrant triggers a process which, as a matter of fundamental fairness, must be pursued with reasonable diligence and with reasonable dispatch.[9] What will constitute a reasonable time will, of necessity, vary with the facts of each case. Obviously, a violator who has succeeded in evading the authorities is in no position to complain of a delay. Even in other cases delay will not in and of itself suffice to show prejudice, except in an extreme case,[10] and actual prejudice vel non is the focal point of the inquiry.[11] Here appellant contends, as he did in the District Court, that the Board's delay resulted in the loss of testimony which he would have adduced from a former police officer who died in the interim, and that his mother was prepared to testify that appellant did not receive certain notices from the Parole Board which seemingly figure in the charge that appellant failed to submit required monthly reports. We think the death of a potential witness, coupled with a period sufficiently long to raise a question that the delay was unreasonable in extent, is sufficient to warrant further inquiry and to preclude summary judgment.

■ The record is not entirely clear as to whether appellant actually contested the fact of parole violation and would have adduced testimony and other evidence to support his claim of innocence, or whether the material which appellant would have submitted went only to a plea for dispositional consideration. Should it develop on the remand that appellant contested the fact of violation and was precluded from submitting favorable testimony by virtue of the Board's delay, we think an order of outright release may well be appropriate. On the other hand, should it be the case that appellant does not deny violating his release but instead had mitigating evidence to offer going to the dispositional phase of the proceedings, the District Court should return the case to the Parole Board for reconsideration in light of its recently promulgated regulations; among other factors, the Board can take into consideration the unavailability of mitigating evidence and testimony occasioned by its delay in holding the revocation hearing and a proffer as to what evidence or testimony appellant would have adduced but for the delay. Smith v. Rivers, No. 20685, *infra*.[12]

9. *Cf.* United States v. Gernie, 228 F.Supp. 329 (S.D.N.Y.1964); People v. Winfrey, 20 N.Y.2d 138, 228 N.E.2d 808 (1967).

10. In a case like United States v. Gernie, *supra* note 9, or United States ex rel. Howard v. Ragen, 59 F.Supp. 374 (N.D. Ill.1945), where extreme delays were involved, prejudice was presumed.

11. Wholly different problems are raised where the violator is in custody solely pursuant to a warrant and awaiting a hearing on the fact of violation. In such circumstances, habeas corpus has been held to lie to compel a prompt hearing irrespective of any showing of prejudice accruing from the delay. United States ex rel. Buono v. Kenton, 287 F.2d 534 (2d Cir. 1961); United States ex rel. Vance v. Kenton, 252 F.Supp. 344 (D.

Conn.1966). Compare Carswell v. Parker, 128 U.S.App.D.C. ——, 385 F.2d 645 (July 24, 1967).

12. We do not consider the disputed issues as to the circumstances of appellant's arrest to be material and accordingly that issue is not included within our remand. Even were appellant to prevail in his contention that he was retaken pursuant to the violator warrant and not pursuant to an arrest by the Houston, Texas, police, it does not establish that appellant is entitled to relief. The District Court made a determination that its sentence would run consecutively with any unserved time on the original Alabama sentence. The Parole Board was thereby precluded from any dispositional alternative involving what is essentially

Reversed and remanded for proceedings consistent with this opinion.

No. 20,685 *Smith v. Rivers*

No. 20,686 *White v. United States Board of Parole*

No. 20,687 *Jacobs v. District of Columbia Board of Parole*

PER CURIAM:

Appellants are parole violators who challenge the standards and procedures that resulted in a lack of administrative determination to execute a violator warrant.

 Although the details vary, the facts in these cases are similar. Convicted of a criminal offense, each appellant was sentenced by a federal court to a term of imprisonment. After partial service of that sentence, each was released on parole, a term here used to include a mandatory release.[13] Each of the two parole boards involved (hereafter "parole board")[14] has supervision over a releasee or parolee until the expiration of his maximum term.[15] During the period of this supervision, each appellant was charged with another criminal offense and the board promptly issued its warrant charging a violation of the terms of parole by virtue of that offense. In due course, each appellant was convicted by a court of competent jurisdiction and each was sentenced to a term of imprisonment.

Appellant White has now completed service of the intervening sentence and his release has been revoked as a result of the violation. He is now incarcerated in a federal institution serving the unexpired portion of his original term. There is nothing in the record to indicate that he was ever given a hearing on the disposition to be made of his admitted parole violation. The other appellants are presently serving their intervening sentences and violator warrants have been lodged as detainers for execution following completion of their present sentences.

 The intervening convictions have become final. The fact of violation of parole is not challenged, and appellants do not claim that a hearing on this issue was required. See Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (*en banc*), cert. denied *sub nom.* Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316 (1963). Rather, conceding the fact of parole violation, appellants point out that the parole board has a wide choice of dispositional alternatives. (1) It may excuse the violation altogether and withdraw its warrant. (2) It may immediately revoke parole. By that action, the parolee is permitted to serve the unexpired portion of his original sentence concurrently with any new sentence imposed for the act constituting the parole violation. (3) It may withhold revocation until the parolee has completed service of his intervening sentence and then revoke parole. That course results, in effect, in consecutive as contrasted with concurrent service of sentence. That is, the violator serves the unexpired portion of his original sentence separately from—usually after

concurrent sentence treatment. Thus, were appellant actually serving time pursuant to the violator warrant in the first instance, followed by service of the Dyer Act sentence, the end result is the same and appellant would receive no tangible relief in the form of sentence reduction or release from parole supervision.

13. Some appellants were mandatorily released after service of the prescribed sentence minus accumulated statutory good time credits. One mandatorily released is deemed "as if released on parole." 18 U.S.C. § 4164 (1964).

14. Appellant White is under the jurisdiction of the United States Board of Parole. See 18 U.S.C. § 4203 (1964). The other appellants are under the jurisdiction of the District of Columbia Board of Parole. See 24 D.C.Code §§ 204, 205 (1961).

15. The board's jurisdiction to issue a violator warrant with respect to a mandatory releasee terminates 180 days before expiration of the maximum sentence. Birch v. Anderson, 123 U.S.App.D.C. 153, 358 F.2d 520 (1965). We have no problem of timely issuance in these cases.

—the sentence imposed for the criminal offense constituting the violation.[16]

■ The broad discretion vested with the parole board in the dispositional process is plain.[17] But appellants claim that this process requires the board to apply pre-announced standards to the particular facts before it and to afford the violator an *in limine* disposition hearing wherein mitigating circumstances and other data relevant to the board's determination can be adduced.

Appellees acknowledge that some parole violations are disposed of other than by revocation for consecutive service of the unexpired term of the original sentence.[18] Yet, it is appellees' position that the board's dispositional discretion is "unqualified and nonreviewable" and that there is neither statutory nor constitutional warrant for the dispositional hearing which appellants envision. We are told that "any judicially imposed limitations on the execution of parole violator warrants must be woven out of whole cloth" and that courts have no business or power "to review the Parole Board's choice of penalties or remedies" or to require a hearing "of any sort

* * * tailored to conform with judicial predilections."

■ The board's selection of a particlar disposition, after full and fair consideration of the available facts, may "be regarded as *almost* unreviewable," Hyser v. Reed, *supra*, 115 U.S.App.D.C. at 269, 318 F.2d at 240 (emphasis added). Yet, we are not prepared to hold that failure to afford a procedure whereby the violator may seek a favorable disposition, or an outright refusal to consider proffered evidence in mitigation, is immune from judicial overview. *Cf.* Creek v. Stone, 126 U.S.App.D.C. 329, 379 F.2d 106 (May 1, 1967). However, in view of intervening events, to which we now turn, we find it unnecessary to chart the metes and bounds of judicially cognizable claims with respect to the dispositional phase of parole violation proceedings.

While these cases and the related cases which we also decide today [19] were pending, we were informed that the parole boards had undertaken a thorough review of their procedures for dealing with requests for favorable dispositions. We are advised that, in lieu of the informal procedures heretofore followed,[20] com-

16. It appears that the procedural mechanics for obtaining these results varies with the board involved, but appellees agree that there are methods whereby each board can, if it so elects, effectuate any of these alternative dispositions.

17. See Hyser v. Reed, *supra*, 115 U.S. App.D.C. at 269, 318 F.2d at 240. Compare the separate views of Judges Bazelon and Edgerton, 115 U.S.App.D.C. at 278, 318 F.2d at 249, and Judges Fahy and Wright, 115 U.S.App.D.C. at 288–290, 318 F.2d at 259–261.

18. At our request, appellees submitted a memorandum detailing dispositions of parole violator warrants. It appears that a not insubstantial minority result in dispositions other than outright revocation for consecutive service of sentences. We recognize, of course, that many factors not reflected in the bare numbers may have prompted such consideration. Nevertheless, we cannot say, and appellees do not suggest, that the possibility of a disposition other than revocation for consecutive service is so

negligible as to be dismissed as academic.

19. *See* Shelton v. United States Bd. of Parole, No. 20591; Boswell v. United States Bd. of Parole, No. 20674; and Williams v. Preston, No. 20823.

20. The record shows that the District of Columbia Parole Board, prior to adoption of these new regulations, considered whether its warrant should be executed or withdrawn prior to service of the intervening sentence, although it appears that no formal procedure was followed for making such a determination. An appendix to the Government's brief in the *Boswell* case, *supra* note 7, shows that the United States Board of Parole had a procedure for entertaining petitions from violators seeking immediate execution or withdrawal of their warrant, although it does not appear that any formal method of advising violators of their right to seek such consideration was followed. In none of the cases which we decide today was there a claim that appellant's cases were premature and ap-

prehensive regulations have been adopted.[21] We think this a laudable and conscientious effort to bring fundamental fairness into the dispositional process.

We need not rule on appellants' claims that their basic rights have been violated. It is appropriate to remand the cases in order that appellants may pursue the remedies now provided by the boards under the new regulations.

We will vacate the District Court's orders denying relief in these cases and remand with instructions that the complaints be dismissed as premature, without prejudice to resubmission after appellants have pursued their available administrative remedies.[22]

So ordered.

No. 20,823 *Williams v. Preston*

PER CURIAM:

Mandatorily released pursuant to the provisions of 18 U.S.C. §§ 4161, 4163, 4164 (1964), appellant was arrested by Maryland state authorities on a criminal charge. The Parole Board immediately issued its warrant charging a violation of the terms and conditions of release by virtue of the criminal offense. In due course, appellant was convicted in the state court and sentenced to imprisonment. Following his release from state custody, appellant was given a hearing before the Parole Board where he was represented by counsel. A determination to revoke release was made and appellant was returned to federal custody for service of the unexpired portion of his original sentence.

Appellant sought release in this habeas corpus proceeding contending that he was deprived of the equal protection of the laws. At an evidentiary hearing, appellant sought to show that he had been required to serve the unexpired portion of his original sentence consecutively with the sentence imposed for the intervening Maryland offense whereas others, whose cases were substantially similar, were permitted to serve such sentences concurrently. Appellee defended, not on the ground that objective circumstances in appellant's case tipped the scales against concurrent service, but on the fact that appellant's intervening conviction had been had in a state court whereas the others, whose cases appellant cited at the hearing, suffered intervening convictions in federal courts. The District Judge denied relief holding, *inter alia*, that appellant "made no showing that others similarly situated, *i. e.*, other persons serving sentences pronounced by the courts of Maryland or any other state" had been permitted to serve sentences concurrently.

We find it unnecessary to decide whether a dispositional distinction based solely on the fact that the violation in one case is a state court criminal conviction whereas violation in another is a federal court criminal conviction can withstand equal protection-due process scrutiny. Neither need we decide whether judicial relief is available to a parole violator who proves that he was treated differently from others with objectively comparable records. For, while this case was pending on appeal, the Parole Board adopted regulations eliminating the distinction thought determinative below. See Smith v. Rivers, No. 20685, decided today. These regulations provide that an application intended to achieve what is in effect concurrent serv-

pellees did not request that the District Court stay its hand while an available administrative remedy was pursued.

21. The appendix to these opinions contains the regulation of the United States Board of Parole. A virtually identical regulation was promulgated by the D.C. Board.

22. Appellant White claims prejudice due to the delay in holding a dispositional hearing. The grounds for this claim are not clearly reflected in the record, and we do not decide whether or under what circumstances a violator might claim sufficient prejudice from a delayed dispositional hearing to warrant relief. We assume that the board will be in a position to evaluate any claim of prejudice which White may advance and to balance that factor with the other facts in the case in arriving at its determination in the event White elects to submit an application for special consideration.

ice of sentence may be filed by a prisoner in either state or federal custody, and they set forth only one set of standards. We think the Parole Board should be afforded an opportunity to reconsider appellant's case in light of its new regulations. The judgment of the District Court is vacated and the case is remanded with instructions that this case be returned to the Parole Board for further consideration.

So ordered.

### APPENDIX

Counsel for the United States Board of Parole advised the court of the regulations proposed by the Board "in order to establish uniform procedures for withdrawing and executing Parole Board warrants placed as detainers against parolees (including mandatory releasees) subsequently convicted of a federal or state offense." Counsel subsequently advised the court that these regulations were adopted, and have been in effect since August 7, 1967, though there may be changes in draftsmanship before the regulations are adopted in the form in which they will appear in the Federal Register. The Regulations as presented to the court are as follows:

Section 1. In cases where a violator warrant has been placed as a detainer against a parolee convicted and sentenced for a state or federal offense while under supervision, the parolee shall be advised of the outstanding warrant and detainer, the charges underlying the warrant, and his right to apprise the Board in writing of any facts or circumstances which he believes entitle him to have the violator warrant withdrawn or executed prior to the expiration of his intervening sentence.

Section 2. If the Board receives information which convinces it that the parolee is entitled to have the outstanding violator warrant withdrawn, it shall withdraw the warrant and so notify the parolee.

Section 3. If the Board receives information which it determines, in its discretion, justifies further consideration of the question whether the outstanding violator warrant should be revoked or withdrawn prior to the expiration of the intervening sentence, the Board shall direct a member or duly designated examiner to conduct a dispositional interview at the institution where the parolee is incarcerated, or at any place accessible to him. At such dispositional interview the parolee may be represented by counsel of his own choice and may call witnesses in his own behalf, provided that he bears their expense. The parolee shall be given timely notice of the dispositional interview and its procedure.

Section 4. Within a reasonable time after such dispositional interview, the Board shall decide whether the outstanding violator warrant should (1) remain as a detainer, (2) be withdrawn, or (3) be executed. If the Board determines that the parolee should serve the remainder of his original sentence concurrently with his intervening sentence, but is not entitled to have the warrant withdrawn, the Board shall treat the dispositional interview as a revocation hearing, execute the outstanding violator warrant, and revoke parol or mandatory release. The parolee shall be notified promptly of the Board's action.

Section 5. In all cases, including those instances where the Parole Board decides that the information received from prison officials and the papers submitted on behalf of the parolee do not justify a dispositional interview, the Board shall continue to conduct administrative reviews to determine whether (1) the warrant should continue as a detainer, (2) the warrant should be withdrawn, or (3) a dispositional interview should be granted.

Section 6. The Parole Board shall request appropriate officials at the institutions where parolees are serving intervening sentences to forward periodic reports regarding their conduct, behavior, and rehabilitation.

Section 7. To exercise its discretion in determining whether a warrant should be executed, withdrawn or remain as a detainer, the Board shall take into con-

sideration the following factors, among others:

I. The institutional adjustment including the efforts of the inmate to improve himself vocationally and educationally.

 (a) Conduct record in confinement.

 (b) The length of the current sentence and the amount of violation time owed.

 (c) Health condition of the individual, both physical and mental.

 (d) Attitude of the offender toward his crime.

 (e) Family situation.

II. The protection of the community.

 (a) The gravity of the offense charged in the violation warrant.

 (b) The individual's prior criminal history.

 (c) The overall adjustment of the individual while he was on parole in the community.

III. Cooperation with law enforcement or institutional officials.

IV. And any other such factors which the Board feels are pertinent to the case.